# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:16-cr-00085-GZS |
| | ) | |
| CARLOS MANUEL PEREZ-CRISOSTOMO, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER ON PENDING MOTIONS

Before the Court are Defendant's Motion for Compassionate Release (ECF No. 137) and Motion to Appoint Counsel (ECF No. 138).  Having reviewed the Motions, related filings (ECF Nos. 139 & 140), along with the entire docket, the Court DENIES Defendant's Motions.

## I.   LEGAL STANDARD

In 2018, Congress enacted the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act" or "FSA").  Section 404 of the First Step Act retroactively applies the Fair Sentencing Act of 2010, which raised the threshold cocaine-base quantities necessary to trigger mandatory minimum sentences under 21 U.S.C. § 841(b).  See United States v. Smith, 954 F.3d 446, 447-48 (1st Cir. 2020).  As a result, the First Step Act "offers certain persons convicted under § 841 prior to enactment of the Fair Sentencing Act a chance to seek a retroactively reduced sentence."  Id.  A prisoner seeking a reduced sentence under section 404 of the First Step Act must have committed the underlying offense before August 3, 2010.  See FSA § 404(a).  Even if a prisoner is eligible for a reduction under section 404, a court is not required to grant relief.  See id. § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence

pursuant to this section."); <u>Smith</u>, 954 F.3d at 452 ("The First Step Act gives district courts discretion to grant or deny a sentencing reduction.").

The First Step Act also amended 18 U.S.C. § 3582(c)(1)(A) to permit prisoners to bring their own motions for compassionate release under that subsection.  <u>See</u> FSA § 603; <u>United States v. Fox</u>, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("The First Step Act did not change the statutory criteria for compassionate release, but it did change the procedures, so that the Bureau of Prisons is no longer an obstacle to a court's consideration of whether compassionate release is appropriate.").  § 3582(c)(1)(A) "authorizes a court to reduce a term of imprisonment when 'extraordinary and compelling reasons warrant such a reduction'" and the prisoner seeking the reduction has exhausted his administrative remedies.  <u>United States v. Ruvalcaba</u>, 26 F.4th 14, 18 (1st Cir. 2022).

To grant a motion under § 3582(c)(1)(A), "the district court must find both that the defendant has presented an 'extraordinary and compelling' reason warranting a sentence reduction and that 'such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.'"  <u>Id.</u> at 18-19 (citations omitted).  With respect to a prisoner-initiated motion under § 3582(c)(1)(A), however, there is currently no applicable policy statement that is binding on the court's review of such motion.  <u>See id.</u> at 23.  As such, when reviewing a prisoner-initiated motion for compassionate release, "district courts enjoy broad discretion[] and may conduct a holistic review to determine whether the individualized circumstances, taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release."  <u>United States v. Trenkler</u>, 47 F.4th 42, 47 (1st Cir. 2022); <u>see</u> <u>Ruvalcaba</u>, 26 F.4th at 18-19 ("[A] district court, reviewing a prisoner-initiated motion for compassionate release . . . , may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling

reason warranting relief."). The court's "holistic review of a compassionate release motion . . . should be guided by the defendant's presentation of his own arguments." United States v. Gonzalez, No. 22-1007, 2023 WL 3641465, at *1 (1st Cir. May 25, 2023).

If the court determines that the defendant's motion has presented extraordinary and compelling reasons to warrant a sentencing reduction, it must then consider any applicable factors under 18 U.S.C. § 3553(a) "and 'determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case.'" Ruvalcaba, 26 F.4th at 19 (quoting United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021)); see, e.g., United States v. Almeida, No. 2:11-cr-00127-DBH, 2021 WL 22332, at *2 (D. Me. Jan. 4, 2021) (denying compassionate release based on § 3553(a) factors after finding that defendant's medical conditions were extraordinary and compelling in light of COVID-19 pandemic).

## II.    DISCUSSION

Defendant Carlos Manuel Perez-Crisostomo, 51 years old, has served more than 70% of his 121-month sentence imposed in September 2017 for conspiring to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (See Judgment (ECF No. 90), PageID #s 110-11; ECF No. 140-4, PageID #s 503-04.)[1] He is currently serving his

---

[1] Based on the Sentencing Guidelines Manual in effect at the time of Defendant's sentencing, the Court determined that his combined adjusted offense level was 30. See Statement of Reasons (ECF No. 91-1), PageID # 121; see also U.S.S.G. §§ 2D1.1(a)(5), (c)(5). The Court applied an obstruction-of-justice enhancement, which added two offense levels, and denied him credit for acceptance of responsibility based on his use of a false identity throughout his criminal proceedings and his "continuing effort to obfuscate the truth about his background." 9/7/2017 Sentencing Tr. (ECF No. 98), PageID # 143; see Statement of Reasons, PageID # 121; U.S.S.G. § 3C1.1, cmt. n.4(F), (H) ("providing materially false information" to probation officer regarding "investigation for the court" or to a judge merits application of a two-level, obstruction-of-justice enhancement). Defendant's total offense level of 32, along with his Category I criminal history, produced a Guideline range of 121 to 151 months. See Statement of Reasons, PageID # 122. The First Circuit subsequently affirmed the 121-month sentence this Court imposed. See United States v. Perez-Crisostomo, 899 F.3d 73, 74 (1st Cir. 2018).

sentence at FCI Loretto with a projected release date of October 8, 2023.[2]  The Bureau of Prisons ("BOP") has categorized him as a Physical Care Level 2 and Mental Health Care Level 1.  (See ECF No. 140-2, PageID # 497.)  While FCI Loretto has no active COVID-19 cases at this time, it has reported one inmate death due to COVID-19 at its facility.[3]  Additionally, approximately 72% of its current inmate population has been vaccinated.[4]  Defendant is not vaccinated but has recovered from COVID-19, having contracted the illness in December 2020.  (See ECF No. 137-5, PageID #s 435-36, 439; ECF No. 139-1, PageID #s 487-88.)

On September 28, 2022, Defendant submitted a request for compassionate release to FCI Loretto "based on [a] Debilitated Medical Condition," citing "family issues, prison conditions, COVID-19, lack of programming, monkeypox, and [] health issues." (ECF No. 137-3, PageID # 423.)  The following week, FCI Loretto's Warden denied his request, concluding that he was "not eligible for a Compassionate Release due to a Debilitated Medical Condition." (ECF No. 137-4, PageID # 424.)  On January 24, 2023, Defendant filed the pending Motion for Compassionate Release (as well as the associated Motion to Appoint Counsel), invoking 18 U.S.C. § 3582(c)(1)(A) as well as section 404(b) of the First Step Act.  For the following reasons, the Court concludes that his request for relief fails under both statutes.

Defendant is ineligible for a reduced sentence under section 404(b) of the First Step Act because his underlying cocaine-base offense was committed after August 3, 2010.  (See Judgment,

---

[2] See ECF No 140-2, PageID # 497; https://www.bop.gov/inmateloc (last visited June 5, 2023).  The Court notes that Defendant's Motion lists a later release date of October 7, 2024.  See Def. Mot. (ECF No. 137), PageID # 406.

[3] See Inmate COVID-19 Data, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last updated June 2, 2023).

[4] See Inmate COVID-19 Data, supra note 3.  The Court acknowledges Defendant's assertion that FCI Loretto's COVID-19 statistics are unreliable and out-of-date.  See Def. Mot., PageID # 410.  However, BOP's data on COVID-19 at FCI Loretto is up to date as of June 2, 2023.  See Inmate Covid-19 Data, supra note 3.

PageID # 110) (listing March 6, 2016 as date Defendant's "[o]ffense [e]nded"); see also FSA § 404(a) (limiting "covered offenses" to those committed before August 3, 2010); United States v. Valdez, 834 F. App'x 979, 980 (5th Cir. 2021) ("Because [the defendant]'s offense was not committed before August 3, 2010, it was not a covered offense for purposes of the Fair Sentencing Act . . . ."). Because Defendant was sentenced in 2017, "his term of imprisonment already accounted for the [2010] changes to the cocaine base minimums." United States v. Carter, No. 2:15-CR-00012-DBH-1, 2020 WL 5880466, at *1 (D. Me. Oct. 2, 2020), report and recommendation adopted, 2020 WL 6487192 (D. Me. Nov. 4, 2020).

In evaluating Defendant's eligibility under § 3582(c)(1)(A), the Court must first consider whether he has fully exhausted his administrative remedies prior to filing the pending Motion for Compassionate Release. § 3582(c)(1)(A)'s exhaustion requirement is "a non-jurisdictional claim-processing rule." United States v. Texeira-Nieves, 23 F.4th 48, 53 (1st Cir. 2022). It is therefore mandatory unless waived or conceded by the Government. See United States v. Hassan, No. 2:16-cr-00084-JDL, 2020 WL 6163125, at *2 (D. Me. Oct. 21, 2020). Here, the Government does not dispute that Defendant asked BOP for a sentence reduction and waited the required amount of time before filing his Motion with this Court. Instead, the Government alleges that Defendant "has failed to provide any documentation reflecting that he asked the Warden for relief under the Equal Act" and therefore, by failing "to identify the same or similar grounds for compassionate relief in both his request to BOP and his [M]otion," Defendant has failed to satisfy the exhaustion requirement. (See Gov. Response (ECF No. 139), PageID #s 479-80.) "The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty — but [this Court] need not resolve that question today." Texeira-Nieves, 23 F.4th at 53. Because the Court finds that the Motion fails on its merits, the Court

assumes without deciding that Defendant has satisfied § 3582(c)(1)(A)'s administrative exhaustion requirement.  See id. (adopting similar approach); United States v. Waite, No. 2:18-CR-00113-GZS, 2022 WL 2966505, at *2 (D. Me. July 27, 2022) (same); United States v. Greene, No. 1:17-cr-00012-NT, 2020 WL 4475892, at *5 n.4 (D. Me. Aug. 4, 2020) (same).

In addressing the merits of Defendant's request under § 3582(c)(1)(A), the Court is mindful that the COVID-19 pandemic has been an extraordinary event that has been especially challenging for BOP and the inmates in its care.  However, it is against this backdrop that Defendant must show individualized extraordinary and compelling reasons as to why he should not be required to serve the remainder of his sentence.  To this effect, Defendant informs the Court that he "suffers from numerous medical conditions," "such as Hypertension, Hyperlip[i]demia, Glaucoma, Arthritis, and Obesity."  (Def. Mot. (ECF No. 137), PageID #s 409-10.)  He maintains that FCI Loretto has inadequately managed the spread of COVID-19 within its facility, thereby "threaten[ing] the health and lives of [s]taff members and inmates."  (Id., PageID # 410; see id., PageID # 414.)  As examples of FCI Loretto's alleged mishandling of COVID-19, Defendant cites a lack of social distancing, poor air circulation, and a failure to properly test, vaccinate, and quarantine inmates and staff members.  (See id., PageID #s 410-11.)  He also asserts that, as a result of his contracting COVID-19 in December 2020, his medical conditions have become more "complicated" and "he is recommended to take" numerous medications.  (Id., PageID # 411.)  Finally, Defendant highlights a "disparity between the sentence he received and the sentence he could have received had he been sentenced" today.  (Id., PageID # 412; see Def. Reply (ECF No. 140), PageID # 493.)

Despite Defendant's stated concerns that FCI Loretto has failed to adequately vaccinate its staff and inmates, he has refused the opportunity to receive a Pfizer-BioNTech COVID-19 vaccine

himself.  (See ECF No. 139-1, PageID #s 487-88.)  Because his Motion is silent as to this fact, the Court cannot discern the reason for his refusal of the vaccine (be it according to medical advice or otherwise).  "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[5]  United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see United States v. Greenlaw, No. 1:18-cr-00098-JAW, 2021 WL 1277958, at *6 & n.6 (D. Me. Apr. 6, 2021) ("[A]n inmate's vaccination refusal—without more—should be considered a factor, among others, against granting a motion for compassionate release if the motion is based on an inmate's risk of contracting COVID-19 while in prison."); see also United States v. Akerson, No. 1:16-CR-00130-JAW-1, 2021 WL 1865223, at *9 (D. Me. May 10, 2021) (noting that "COVID-19 vaccines have proven to be extremely effective" in preventing serious illness or death from COVID-19); United States v. Sanders, No. CR SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (collecting cases from "the vast majority of other courts who have ruled . . . that the highly effective available [COVID-19] vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release").  Defendant's refusal of vaccination, along with his recovery from contracting COVID-19 in December 2020, weighs heavily against a finding that his circumstances are extraordinary and compelling based on his risk of serious illness from COVID-19.

Moreover, "not every complex of health concerns is sufficient to warrant compassionate release," a fact that "remains true even in the midst of the COVID-19 pandemic."  Saccoccia, 2021

---

[5] The rise of COVID-19 variants has not materially changed this calculus.  See, e.g., United States v. Davidson, No. 1:15-cr-00288-RMB, 2022 WL 484829, at *3 (S.D.N.Y. Feb. 17, 2022) ("While breakthrough infections have occurred in vaccinated people due to the Delta and Omicron variants[,] generalized statements about vaccine efficacy do not amount to extraordinary and compelling circumstances – the vaccine is still highly effective at preventing death and serious injury, even against the Delta and Omicron variants." (cleaned up)).

WL 3660814, at *6.  The Centers for Disease Control and Prevention ("CDC") recognizes obesity and hypertension – but not hyperlipidemia, glaucoma, or arthritis – as conditions that increase an individual's risk of becoming seriously ill from COVID-19.  See Coronavirus Disease: People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023).[6]  Based on the Presentence Investigation Report prepared for Defendant, the Court was aware at the time of his sentencing that he suffered from hypertension and obesity.  (See Rev. PSR, ¶ 37.)  Although the Court did not contemplate then the emergence of a pandemic that would pose additional threats to Defendant's health, his medical records do not show that his health has materially declined during his incarceration (due to the pandemic or otherwise).[7]  There is nothing in Defendant's records to indicate that his medical conditions are not, or cannot be, well managed within FCI Loretto.[8]

---

[6] The Court notes, however, that the CDC is more equivocal regarding hypertension, stating that hypertension is "possibly" a risk factor.  See Coronavirus Disease: People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023).

[7] Defendant suggests that his "contraction [of COVID-19] has further complicated his medical conditions and he is recommended to take [several] medications as a result."  ECF No. 137, PageID # 411.  His medical records, however, indicate that he had already been prescribed most of those medications before he contracted COVID-19 in December 2020.  See ECF No. 137-6, PageID # 445.

[8] The Court also notes that the documents Defendant submitted in support of his assertion that FCI Loretto has inadequately managed COVID-19 are from December 2020, when there was a substantial increase in COVID-19-related hospitalizations and deaths (and when the COVID-19 vaccines first became available to select individuals).  See ECF No. 137-7, PageID # 449; ECF No. 137-9, PageID # 457; see generally ECF No. 137-8; see also CDC Museum COVID-19 Timeline, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/museum/timeline/covid19.html (last updated March 15, 2023); Trends in United States COVID-19 Hospitalizations, Deaths, and Emergency Visits by Geographic Area, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#trends_weeklyhospitaladmissions_select_00 (last updated June 1, 2023).  Today, "[a]lthough COVID-19 continues to present a real threat," it "is no longer considered a national emergency."  United States v. Martinez, No. 2:18-CR-00089-JAW, 2023 WL 3305674, at *7 (D. Me. May 8, 2023); see H.J.Res. 7, 118th Cong. (2023) (joint congressional resolution ending COVID-19 National Emergency Declaration); Stephanie Nolan, W.H.O. Ends Global Health Emergency Designation for Covid, N.Y. TIMES (May 5, 2023), https://

Additionally, the potential sentencing disparity Defendant notes is not a sufficient basis for finding that extraordinary and compelling reasons exist.  Defendant relies on the Eliminating a Quantifiably Unjust Application of the Law Act of 2021 (the "EQUAL Act"), which – if enacted – would eliminate the sentencing disparity between powder-cocaine and crack-cocaine offenses.  See H.R. 1693, 117th Cong. (2021).  As drafted, the EQUAL Act would permit a court to "impose a reduced sentence" on "a defendant who, on or before the date of enactment of [the] Act, was sentenced for" a cocaine-base offense in violation of (inter alia) 21 U.S.C. § 841.  Id. § 2(c)(2)(A).  However, "[p]roposed legislation itself is insufficient to grant wholesale relief to all defendants who could potentially benefit from such legislation," and "no court has held that the proposed EQUAL Act is an extraordinary and compelling reason to reduce a defendant's sentence."  United States v. Ford, No. CR 10-20129-07-KHV, 2023 WL 1434302, at *6 & *6 n.5 (D. Kan. Feb. 1, 2023) (collecting cases); see, e.g., United States v. Sims, No. 19CR857NSR01, 2022 WL 3013111, at *4 (S.D.N.Y. July 29, 2022) ("[T]he Court finds that [] considering the applicability of the EQUAL Act's proposed adjustments [in the context of a § 3582(c)(2) motion] is premature.").  More generally, the fact that a defendant "would have been sentenced under a lower guideline range" today as compared to his original sentencing date is "not enough to carry the day."  See United States v. D'Angelo, No. 2:13-CR-00114-NT, 2022 WL 10066359, at *3 (D. Me. Oct. 17, 2022).

Because the Court concludes that Defendant has not presented extraordinary and compelling circumstances, it need not proceed with a full consideration of the factors listed in 18 U.S.C. § 3553(a).  See Texeira-Nieves, 23 F.4th at 52 ("The district court is not required to address the section 3553(a) factors unless it finds in favor of the movant on the other issues.").  Nonetheless, the Court

---

www.nytimes.com/2023/05/05/health/covid-who-emergency-end.html (reporting WHO's announcement "that it was ending the emergency it declared for COVID-19").

acknowledges that the record includes evidence of Defendant's rehabilitative efforts and employment plans upon release, which aligns with his projected release in October 2023.

Finally, the Court addresses Defendant's Motion to Appoint Counsel (ECF No. 138). "[T]here is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings." United States v. Manso-Zamora, 991 F.3d 694, 696 (6th Cir. 2021); see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). Based on the record presented, and in light of this Court's ruling on Defendant's Motion for Compassionate Release, the Court concludes that appointment of counsel would not provide meaningful assistance to Defendant. See United States v. Dent, No. 2:15-cr-10-DBH-01, 2020 U.S. Dist. LEXIS 194814, *4 (D. Me. Oct. 21, 2020) (finding that appointment of counsel would not assist court in resolving motion for compassionate release); United States v. Martinez, No. 2:18-CR-00089-JAW, 2023 WL 3305674, at *10 (D. Me. May 8, 2023) (denying motion for appointment of counsel in connection with compassionate-release motion because there were no "complex legal or factual issues related to [the defendant]'s motion"). The Court therefore declines to appoint him counsel in connection with his Motion for Compassionate Release, as well as his request for a sentence reduction under Section 404 of the First Step Act.

## I.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for Compassionate Relief (ECF No. 137) and Motion to Appoint Counsel (ECF No. 138).

SO ORDERED.


/s/George Z. Singal
U.S. District Judge

Dated this 5th day of June, 2023.